*Formatted for Electronic Distribution*                                                    *Not for Publication*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

Filed & Entered
On Docket
April 12, 2017

In re:

    **Berton Frye**                                              Chapter 7 Case
    **and Virginia Frye,**                                       # 15-10242
          **Debtors.**

*Appearances:*        *Jacob O. Durell, Esq.*                      *Kevin Purcell, Esq.*
             *Stevens Law Office*                        *Office of the United States Trustee*
             *Stowe, VT*                                          *Albany, NY*
             *For the Debtors*                               *For the United States Trustee*

                                        *Eunice Hudson, Esq.*
                                        *U.S. Department of Justice*
                                        *Washington, D.C.*
                                        *For the United States*

## MEMORANDUM OF DECISION
### REJECTING THE DEBTORS' CLAIM THAT § 329 IS UNCONSTITUTIONAL AND
### GRANTING, IN PART, THE U.S. TRUSTEE'S MOTION FOR DISGORGEMENT OF ATTORNEYS' FEES

    The U.S. Trustee seeks disgorgement of all attorneys' fees paid in this case, based upon the excessiveness of the fees the Debtors' attorney received and that attorney's failure to comply with the disclosure requirements of the Bankruptcy Code and Rules. The attorney denies his fees are excessive, concedes he failed to disclose fees properly, but opposes full disgorgement as a sanction, on several grounds. He also alleges the controlling statute, § 329 of the Bankruptcy Code, is unconstitutionally overbroad and vague.

    For the reasons articulated below, the Court determines, first, that the Debtors' attorney's constitutional arguments are without merit; second, that the fees paid to the Debtors' attorney were not excessive; third, that the Debtors' attorney's failure to timely and fully disclose all fees is a violation of the Bankruptcy Code and Rules; and finally, that the appropriate sanction in this case is to require the Debtors' attorney to disgorge one-half of all fees paid.

### JURISDICTION

    This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference Chief Judge Christina Reiss entered on June 22, 2012. The Court declares the legal issues raised by the instant motions and objections to be core matters under 28 U.S.C. § 157(b)(2)(A) and (O), over which this Court has constitutional authority to enter a final judgment.

## PROCEDURAL HISTORY

The Debtors have a significant history of bankruptcy filings in this District.  In the past fourteen years, the Debtors have filed for Chapter 13 relief five times, both jointly and individually.[1]  The instant case, filed on May 20, 2015, was the Debtors' sixth attempt at reorganization under Chapter 13.[2]  After filing their petition in the instant case *pro se*, the Debtors retained attorney Jacob Durell ("Attorney Durell") to represent them; he filed a notice of appearance on May 29, 2015.[3]

On June 9, 2016, the U.S. Trustee filed a motion seeking the disgorgement of all attorneys' fees received in this case, in the amount of $20,500, based upon the excessiveness of Attorney Durell's fees and his repeated failure to disclose fees pursuant to § 329[4] and Rule 2016(b) (doc. # 165, the "Motion to Disgorge").  On July 1, 2016, Attorney Durell filed an objection to the Motion to Disgorge[5] (doc. # 176, the "Objection").  The Objection asserts: (i) § 329 is unconstitutionally vague and overbroad; (ii) most or all of the payments at issue were not made "in connection with" bankruptcy, and therefore are not subject to the disclosure requirements of § 329; (iii) payments from a third party are outside the bankruptcy estate and thus are not subject to disclosure or disgorgement; (iv) any disgorgement of fees as a sanction for non-disclosure should be limited due to the extraordinary circumstances present in the case; and (v) the payments he received are not excessive given the amount of work he performed.

On July 20, 2016, the Court held a hearing on the Motion to Disgorge and Objection, and set a schedule for the filing of supplemental papers.  After multiple extensions of time, the U.S. Trustee and the United States Attorney filed a joint reply to the Objection, responding to each of Attorney Durell's arguments (doc. # 205, the "Reply").  On January 3, 2017, Attorney Durell filed a sur-reply (doc. # 206, the "Sur-Reply"), supplementing the arguments he presented in the Objection.

## FACTUAL HISTORY

Based upon the written record in the case, and the arguments presented at the July 20, 2016 hearing, the Court finds there is no dispute as to the following facts, and relies upon them for purposes of this memorandum of decision.

---

[1]  The Debtors filed their first Chapter 13 case on May 7, 2003 (case # 03-10710). The Court thereafter severed that joint case to be in the name of Mrs. Frye only, and allowed Mr. Frye to continue with his own Chapter 13 case (case # 03-10959). Subsequently, on January 3, 2005, Mrs. Frye filed a second Chapter 13 petition (case # 05-10004). Seven years later, on May 28, 2013, Mr. Frye again filed for Chapter 13 relief (case # 13-10381), and on August 30, 2013, Mrs. Frye filed her third Chapter 13 case (case # 13-10602).

[2]  The instant case was subsequently converted to Chapter 7 on February 10, 2016 (doc. # 135).

[3]  On January 8, 2016, Attorney Durell filed a motion to withdraw as attorney (docs. ## 123, 131) and the Court granted the motion on February 19, 2016 (doc. # 147).  Currently, Nancy Geise, Esq. represents the Debtors.

[4]  All statutory citations refer to Title 11 of the United States Code (the "Bankruptcy Code"), unless otherwise indicated.

[5]  Only Attorney Durell has responded to the Motion to Disgorge; he has raised defenses on behalf of both himself and Attorney Harold Stevens where applicable.

1. On May 4, 2015, the Debtors entered into a legal services agreement with Attorney Durell (doc. # 165, Ex. A, the "Legal Services Agreement").  It specified that legal services included "development of reorganization plan for return to bankruptcy" (doc. # 165, Ex. A, ¶1).

2. The Legal Services Agreement required a $2,500 retainer fee.  The Debtors' son, Jeffrey Frye, paid that amount to Attorney Durell on June 12, 2015 (doc. # 189-1, p. 3).

3. On May 20, 2015, the Debtors filed a Chapter 13 petition *pro se* (doc. # 1).

4. On May 29, 2015, Attorney Durell first appeared in the case, through the filing of a notice of appearance on behalf of the Debtors.[6]

5. On July 10, 2015, Attorney Durell filed a Chapter 13 plan on behalf of the Debtors, which included a priority claim of $5,000 for attorney's fees (doc. # 41, p. 1).

6. On July 9, 2015, and again on July 21, 2015, Jeffrey Frye made a payment of $2,500 to Attorney Durell.  These payments are categorized as "Deposit/Retainer" on Attorney Durell's Invoice # 35 (doc. # 189-1, p. 3).

7. In early September of 2015, Attorney Durell joined the Stevens Law Office ("SLO").

8. On September 28, 2015, Attorney Durell received a payment of $1,500 from the Debtors, which is categorized as "Deposit/Retainer" in Invoice # 50; that invoice indicates this sum was the remaining amount due to satisfy a $3,000 retainer (doc. # 189-1, p. 6).[7]

9. On October 14, 2015, the Debtors entered into a retainer agreement with Attorney Harold Stevens ("Attorney Stevens") of SLO.  The subject line of the agreement is: "General Representation re: consultation and potential settlement regarding Foreclosure / bankruptcy ~ Community National Bank, Vermont Community Loan Fund, Northeastern Vermont Development Association and Northern Community Investment Corporation" (doc. # 132-2, p. 3).[8]  The retainer fee set out in this agreement is $1,000.

---

[6] Attorney Durell's invoice dated May 6, 2015 (doc. # 189-1, p. 1) indicates that on May 20, 2015, the petition date, he met with the Debtors.  It also indicates he performed legal services regarding the Debtors' bankruptcy case on May 27th and May 28th, before he filed his notice of appearance on May 29th (doc. # 189-1, p. 2).  However, Attorney Durell contends he did not render advice regarding the initial petition (doc. # 176-2, p. 3).

[7] In his Affidavit of Fees Earned (doc. # 189), Attorney Durell supplements his invoices and states he received a $3,000 retainer fee from Jeffrey Frye in early August of 2015, and turned over $1,500 of that sum to an attorney handling the Debtors' insurance dispute.  He also states he received additional payments totaling $4,000 from Jeffrey Frye in September 2015 (doc. # 189, p. 3). None of these transactions appears on the invoices.  Attorney Durell further states the $1,500 payment shown on Invoice # 50 (doc. # 189-1, p. 6) was made by the Debtors, and this is consistent with the payment shown on the disclosure statement dated February 2, 2016 (doc. # 132-1).

[8] In his supplemental motion to withdraw, Attorney Durell states the reference to bankruptcy representation in the SLO agreement was limited: "The SLO agreement referenced the bankruptcy action as a settlement might have covered some bankruptcy issues, but we did not agree expressly that the agreement covered my work in bankruptcy" (doc. # 131, p. 2).

10. On December 8, 2015, Attorney Durell filed an amended Chapter 13 plan on behalf of the Debtors which included a priority claim of $3,000 for attorney's fees (i.e., $2,000 less than the fee request in the prior Chapter 13 plan); he provided no explanation for the change in amount (doc. # 112).

11. On February 2, 2016, Attorney Durell filed a notice regarding attorneys' fees (doc. # 132), with two Form 2030's attached.

   a. The first Form 2030, dated January 26, 2016 and signed by Attorney Stevens, discloses a total charge of $5,468.61 and references the October 14th SLO agreement (doc. # 132-2, p. 1, "First Disclosure Statement"). It shows $1,000 as having already been paid by the Debtors and $4,468.61 outstanding.[9] It further specifies the services he rendered focused on a consultation regarding settlement of foreclosure litigation.

   b. The second Form 2030, dated February 2, 2016 and signed by Attorney Durell, discloses a total charge of $20,500 for services rendered (doc. # 132-1, p. 1, "Second Disclosure Statement"). It indicates that as of October 30, 2015, Attorney Durell had received payments totaling $19,500; the Debtors paid $1,500 of that amount, and a family member (presumably, Jeffrey Frye) paid the remaining $18,000. The Second Disclosure Statement claims a balance due of $1,000 and specifies that only $4,050 of the total $20,500 fee is attributable to services related to the bankruptcy case.

12. The fee disclosure statements Attorney Durell filed on February 2, 2016 were the first and only disclosure statements filed in this case.

## DISCUSSION

### I.   Constitutionality of § 329

Section 329 of the Bankruptcy Code governs debtors' transactions with attorneys. It provides:

(a) Any attorney representing a debtor in a case under this title, **or in connection with such a case**, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered **in contemplation of or in connection with the case** by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

   (1) the estate if the property transferred—

      (A) would have been property of the estate; or

      (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

   (2) the entity that made such payment.

---

[9] The record appears to indicate this $1,000 payment was the retainer fee required by the October 14th agreement.

11 U.S.C. § 329 (emphasis added).  This statute requires a debtor's attorney to file a statement of all compensation paid or agreed to be paid for services "in contemplation of" and "in connection with" the case, as well as the source the compensation.  The requirement exists because "[p]ayments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny." S. REP. NO. 95-989, at 39 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 6285.

Attorney Durell challenges the constitutionality of § 329(a) based on its alleged overbreadth and vagueness (doc. # 176).  In arguing § 329 is unconstitutionally overbroad, Attorney Durell relies on two contentions.  First, he contends the statute violates the Debtors' and a third party's right to free speech (doc. # 176-2, p. 11).  Second, he contends the statute interferes with the Debtors' right to counsel (doc. # 176-2, p. 11).  Next, Attorney Durell asserts the statute is unconstitutionally vague, as-applied, because it fails to provide sufficient notice and does not place adequate limits on its enforcement (doc. # 176-2, p. 11).  The United States counters each of these arguments, citing well-established Supreme Court jurisprudence and emphasizing Attorney Durell's failure to provide legal support for his arguments.

A law is unconstitutionally overbroad under the First Amendment if "'a substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep.'"  Vt. Right to Life Comm., Inc. v. Sorrell, 875 F.Supp.2d 376, 391 (D. Vt. 2012) (citing Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 450 n.6 (2008)); see Virginia v. Hicks, 539 U.S. 113, 118-20 (2003).  Said differently, an unconstitutionally overbroad statute violates the First Amendment if the statute poses a direct and substantial limitation on protected First Amendment activity.  See Vill. of Schaumburg v. Citizens for a Better Env't, 444 U.S. 620, 636-37 (1980).  "The overbreadth claimant bears the burden of demonstrating, 'from the text of [the law] and from actual fact,' that substantial overbreadth exists."  Virginia v. Hicks, 539 U.S. at 122.

In its Reply, the United States argues Attorney Durell has failed to demonstrate any connection between the duty to disclose attorney's fees pursuant to § 329(a) and the Debtors' individual right to free speech.  Moreover, the United States correctly points out that this statute's disclosure requirements involve commercial speech (as opposed to noncommercial speech), and that this invokes the rational basis test.  See Conn. Bar Ass'n v. United States, 620 F.3d 81, 93 (2d Cir. 2010).  Bankruptcy disclosures constitute commercial speech because (1) they provide "a consumer debtor with information about what to expect in a commercial transaction," (2) "the speech is situated in the federal bankruptcy system, a creature of law pervaded by commerce [and which] allows debtors to refashion commercial transactions in order to discharge debt obligations," and (3) "[a] lawyer's procurement of remunerative employment is a subject only marginally affected with First Amendment concerns . . . and falls within the . . . proper

5

sphere of economic and professional regulation." Id. at 94-95, 100.  Additionally, this particular type of commercial speech is certainly subject to rational basis review as it "impose[s] a disclosure requirement rather than an affirmative limitation on speech." Id. at 95 (citing Milavetz, Gallop & Milavetz, P.A. v. United States, 559 U.S. 229, 249 (2010)).  Here, § 329 is rationally related to a legitimate government interest, as indicated by the legislative history quoted above – to prevent overreaching by a debtor's attorney.  Attorney Durell also fails to show how the statute infringes on the Debtors' right to counsel when, as the United States accurately observes, disgorgement of fees would "not deprive the Debtors of the assistance of counsel of their choice because they already received this assistance" (doc. # 205, p. 7).  In sum, Attorney Durell has failed to meet his burden of proof that § 329 is unconstitutionally overbroad.

Turning to Attorney Durell's constitutional vagueness argument, it is well settled that to prevail on a claim that a statute is impermissibly vague, as-applied, a movant must show the statute fails to provide "people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or it "authorizes or even encourages arbitrary and discriminatory enforcement." Farrell v. Burke, 449 F.3d 470, 485 (2d Cir. 2006) (citing Hill v. Colorado, 530 U.S. 703, 732 (2000)); see also Dickerson v. Napolitano, 604 F.3d 732 (2d Cir. 2010).  Attorney Durell asserts § 329 is vague because it "does not provide fair notice of what work and payments should have been disclosed – except perhaps as to the obvious filings and appearances in Bankruptcy" (doc. # 176-2, p. 11).[10]  However, the statute unequivocally identifies what payments must be disclosed: all fees for services "in contemplation of" and "in connection with" bankruptcy, from all sources.  If Attorney Durell found these phrases to be unclear, it was his responsibility to consult case law, the Bankruptcy Code, the Bankruptcy Rules, and this Court's Local Rules, to determine the scope and impact of the disclosure requirements and ensure his compliance with them. See Milavetz, 559 U.S. at 247 ("Attorneys and other professionals who give debtors bankruptcy advice must know of [Code] provisions and their consequences…").  Attorney Durell also argues "enforcement of § 329 is unpredictable" because the Debtors were "embroiled in much litigation" (doc. # 176-2, p. 11), yet fails to articulate how the Debtors' multiple lawsuits bear any relation to the enforcement of the statute.  For these reasons, the Court finds Attorney Durell has also failed to meet his burden of proof that § 329 is unconstitutionally vague.

## II.      Disgorgement of Fees Based on Their Excessiveness

The U.S. Trustee seeks an order directing disgorgement of all of the $20,500 paid in attorneys' fees, based upon the excessiveness of Attorney Durell's fees and his failure to properly disclose all fees.

---

[10] Attorney Durell does admit he might not have read § 329 at the beginning of the case.

In arguing the fees Attorney Durell received are excessive,[11] the U.S. Trustee relies upon § 329(b) and Local Bankruptcy Rule 2016-2 (doc. # 165, p. 2).

Section 329(b) provides:

> If such **compensation exceeds the reasonable value of any such services**, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—
>> (1) the estate, if the property transferred—
>>> (A) would have been property of the estate; or
>>> (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
>> (2) the entity that made such payment.

11 U.S.C. § 329(b) (emphasis added).  In order to determine whether an attorney's fees are excessive, the Court must first determine whether the fees are reasonable in light of the services rendered.  "What constitutes reasonableness is a question of fact to be determined by the particular circumstances of each case.  The requested compensation may be reduced if the court finds that the work done was excessive or of poor quality."  3 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 329.04 [1] (16th ed. 2016).  Courts apply a totality of the circumstances test to determine the reasonableness of fees under § 329(b), and usually consider the following factors: (1) the amount of time expended on the case, (2) the manner in which the attorney rendered services, (3) the nature of the services and the competence of the performance, (4) the ultimate conclusion in the case, and (5) the lack of complaint from debtors or case trustee.  See In re McDermitt, No. 05-11710, 2006 WL 1582390, at*8 (Bankr. D. Vt. May 30, 2006) (finding attorney's fees were not unreasonable after examining the amount of time the attorney spent in the case, the ultimate conclusion of the case, and lack of complaint from either the debtors or the case trustee).  "Once a question of the reasonableness of counsel's fees is raised by a party in interest bringing a motion, the attorney bears the burden of proving his fee was reasonable."  In re Chez, 441 B.R. 724 (Bankr. D. Conn. 2010) (citing In re Wood, 408 B.R. 841, 848 (Bankr. D. Kan. 2009)).

Here, the U.S. Trustee argues the fees Attorney Durell received are excessive, primarily because he failed to comply with Local Rule 2016-2 (the "Local Rule").  That rule establishes the presumed reasonable fee for debtors' attorneys in chapter 13 cases and requires an application and explanation for any fees sought in excess of the presumed reasonable fee.  While it is true that Attorney Durell failed to file a motion for leave to accept fees in excess of the presumed reasonable fee, his failure to comply with this requirement does not address the salient question of whether the fees he received were reasonable under § 329(b).

---

[11] The Motion to Disgorge is not entirely clear as to whose fees are allegedly excessive.  The preliminary statement appears to include the fees of both Attorney Durell and Attorney Stevens, but the section discussing excessiveness addresses only Attorney Durell's fees.  Hence, the Court interprets this set of allegations as aimed solely at Attorney Durell.

Rather, the inquiry is whether Attorney Durell has shown these fees are reasonable based upon the factors itemized above. Attorney Durell has repeatedly affirmed that he devoted a significant amount of time on this case due to its complex, multi-dimensional nature, billed at a below-market hourly rate, billed for only a portion of the services he provided and, with the help of co-counsel, reached a settlement with the Debtors' four mortgagees. That settlement allowed the Debtors' son sufficient time to close on the sale of the Debtors' property and resulted in one of the mortgagees forgiving significant loans (doc. # 176-2, pp.7- 8). Additionally, the Debtors and their son have expressed their satisfaction with the quality and timeliness of Attorney Durell's services, and have requested that the Court deny the Motion to Disgorge (doc. # 176-1, p. 1). Based on these considerations, the Court finds Attorney Durell has met his burden of proof that the fees received in this case were reasonable, and the U.S. Trustee has failed to demonstrate cause for relief under the Motion to Disgorge based on excessiveness of fees.

### III.    Disgorgement of Fees Based on Failure to Disclose

The U.S. Trustee's other argument in support of an order directing disgorgement of fees is based on Attorney Durell's repeated failure to file the fee disclosure statements as required by § 329(a) and Bankruptcy Rule 2016(b). That Rule mandates the following disclosure of fees:

> Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by §329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. . . . A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed.

FED. R. BANKR. P. 2016(b).

"[T]he approach within the Second Circuit has uniformly been to decide Bankruptcy Code and Rule disclosure violations with an inflexible standard. No exceptions are to be made based upon inadvertence (slipshodness) or good faith." In re Hall, 518 B.R. 202, 207 (Bankr. N.D.N.Y. 2014) (quoting In re Laferriere, 286 B.R. 520, 526 (Bankr. D. Vt. 2002)). Failure to comply with the disclosure requirements under § 329(a) is sanctionable behavior. In re Gorski, 519 B.R. 67, 73 (Bankr. S.D.N.Y. 2014). The court's broad discretion in awarding and denying fees paid in connection with bankruptcy proceedings empowers the bankruptcy court to order debtor's counsel to disgorge fees for failure to disclose. In re Prudhomme, 43 F.3d 1000, 1003 (5th Cir. 1995).

There is no question Attorney Durell failed to meet the disclosure requirements under § 329 and Rule 2016(b). He filed a notice of appearance in the case on May 29, 2015 and did not file any disclosure of fees statement until February 2, 2016 (doc. # 132). Attorney Durell acknowledges his mistake in failing to timely disclose fees: "Whether through oversight or misinterpretation, Debtors' Counsel was not

8

triggered to report fees paid" (doc. # 176-2, p. 4). Nevertheless, Attorney Durell asserts he should not be sanctioned for this failure because (1) most or all of the payments at issue are not made "in connection with" bankruptcy, and (2) fees paid from non-debtor third parties are not subject to notice or disgorgement. Neither of these arguments withstands scrutiny.

*1. Services were in contemplation of, or in connection with, the bankruptcy case.*

The scope of fees a debtor's attorney must disclose under § 329(a) is broad: It includes all compensation paid, or agreed to be paid, for services rendered, or to be rendered, in contemplation of, or in connection with, the bankruptcy case. Courts have broadly interpreted the phrases "in contemplation of" and "in connection with." See In re Laferriere, 286 B.R. 520 (Bankr. D. Vt. 2002) (citing In re Ostas, 158 B.R. 312 (N.D.N.Y. 1993)). "If a debtor pays a fee for underlying professional services at a time he or she is thinking about or 'contemplating' bankruptcy, then the payment is said to be made 'in contemplation of' the bankruptcy case. Whether a debtor is contemplating bankruptcy is a subjective test, based upon the debtor's state of mind 'i.e., whether, in making the transfer, the debtor is influenced by the possibility or imminence of a bankruptcy proceeding.'" In re Laferriere, 286 B.R. at 527 (citations omitted).

Attorney Durell asserts the $19,500 he received from the Fryes is attributable to more than just bankruptcy work. He states $15,308.94 was for litigation of the pending foreclosure cases, preliminary insurance work, the VTSC appeal, general counsel work, and business planning; $1,141.06 was for expenses; and only the remaining $4,050 was for bankruptcy related services he performed. However, the Court cannot rely on this allocation of fees because it is clear the filed invoices are incomplete and do not reflect the entire amount of time the attorney spent.[12]

What is evident from the record is that based on the Legal Services Agreement dated May 4, 2015, the Debtors were contemplating bankruptcy as early as that date, more than two weeks before the Debtors filed a petition on May 20, 2015. That agreement states:

> Services. The following agreement shall pertain to all general practice legal services rendered to [the Debtors] by Attorney in pursuit of the following matters, and any potential claims or defenses available therein ("Services"):
> - VT Comm. Loan Fund, North. Comm. Invest. v. Berton & Virginia Frye (Docket No. 363-12-10 Cacv)
> - CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING SEVERALLY TO POLICY NO. WSH108007 v. BERTON FRYE, VIRGINIA FRYE, and COMMUNITY NATIONAL BANK (CIVIL ACTION NO. 5:14-cv-227)
>   - Including coordination with planned insurance litigation
> - **Development of reorganization plan for return to Bankruptcy**

---

[12] Attorney Durell explains the invoices are not precise because the Debtors specifically asked him to "focus on getting as much work done as possible and not to focus on detailed invoicing" (doc. # 189, p. 2).

Doc. # 132-1, p. 3 (emphasis added).  Attorney Durell insists this explicit mention of bankruptcy should not be determinative.  However, he also acknowledges the Debtors had the filing of a bankruptcy case in mind when they signed the agreement: "In [the Legal Services Agreement], bankruptcy is a list of one of many things that debtors were **thinking** about" (doc. # 206, p. 6) (emphasis added).  This description of the circumstances falls squarely within the meaning of the phrase "in contemplation of bankruptcy" under applicable case law.  See In re Laferriere, 286 B.R. at 527.  For these reasons, the Court finds all fees Attorney Durell received for services rendered from the date of this agreement (May 4, 2015) through the petition filing date (May 20, 2015) were performed in contemplation of bankruptcy, and he was therefore required to disclose those fees, under the mandates of § 329 and Bankruptcy Rule 2016(b).

To determine whether services are "in connection with" the bankruptcy case, courts apply an objective standard: "[I]f it can be objectively determined that the services rendered or to be rendered by the attorney have or will have an impact on the bankruptcy case," then such services are deemed to have been rendered in connection with the bankruptcy case.  In re Gorski, 519 B.R. 67, 72 (Bankr. S.D.N.Y. 2014).

Attorney Durell argues most of the fees he received were categorically not for services "in connection with" a bankruptcy case, because the services he rendered would have occurred regardless of the Debtors' bankruptcy filing (doc. # 176-2, p. 10).  This argument underestimates the broad application of the phrase "in connection with" and understates the extent to which the legal services he rendered, during the pendency of the bankruptcy case, were intertwined with the interests of the bankruptcy estate. See In re Gorski, 519 B.R. at 73.  All services Attorney Durell rendered after May 20, 2015 were in connection with the bankruptcy case since he was representing the Debtors while their bankruptcy case was pending.  Furthermore, based on the record, it is indisputable that the so-called non-bankruptcy legal services were for litigation that was crucial to the Debtors' attempts to reorganize under Chapter 13 and cannot be disentangled from the bankruptcy legal work.  Based on these considerations, the relevant case law, the extensive reach of the phrase "in connection with," and Attorney Durell's failure to establish facts to the contrary, the Court finds all fees paid to Attorney Durell from May 20th forward were for services rendered in connection with the bankruptcy case.

Next, the Court turns to the question of whether the $1,000 fee the Debtors paid to Attorney Stevens was likewise for services rendered in connection with the bankruptcy case.[13]  The subject line of the October 14, 2015 retainer agreement with SLO is: "General Representation re: consultation and

---

[13] The Court considers this question because the U.S. Trustee seeks disgorgement of both the $1,000 fee Attorney Stevens received and the $19,500 fee Attorney Durell received.  However, the U.S. Trustee points only to Attorney Durell's conduct to support that relief (Mr. Durell's alleged excessive fee and failure to disclose fees).  Therefore, the Court addresses Attorney Stevens' fees exclusively to determine whether the services he rendered were "in connection with" the bankruptcy case and thus subject to the disclosure requirements.

potential settlement regarding foreclosure / **bankruptcy** – Community National Bank, Vermont

Community Loan Fund, Northeastern Vermont Development Association and Northern Community

Investment Corporation" (doc. # 132-2, p. 3) (emphasis added).  Attorney Durell again asserts this explicit

mention of bankruptcy does not indicate Attorney Stevens' intent to perform services in the bankruptcy

case, as it was included in the subject line merely to indicate the Debtors had a pending bankruptcy case.

Attorney Durell further argues most of the legal work Attorney Stevens performed under that agreement

was done "in the context of the foreclosure related proceedings which the [Bankruptcy] Court had

allowed to take their own course once it granted relief from stay" (doc. # 206, p. 6).  However, the record

does not support this position.  The motion for relief from stay, filed by secured creditors Vermont

Community Loan Fund, Northern Community Investment Corporation, and Northeastern Vermont

Development Association, was initially filed on October 2, 2015.  The Debtors filed an objection to that

motion on October 21, 2015, and the Court held hearings on the motion and objection in October and

November of 2015.  Ultimately, the Debtors were able to reach a settlement with those secured creditors

and certain underwriters, the Debtors filed a motion to approve that settlement on December 4, 2015 (doc.

# 109), and the secured creditors withdrew their motion for relief from stay on December 7, 2015.  The

invoices attached to the October 14th retainer agreement clearly indicate Attorney Stevens played a part in

the filing of these documents in the bankruptcy case.[14]  Moreover, the finalization of this settlement was a

seminal point in the bankruptcy case's progress.  Thus, contrary to Attorney Durell's assertions, the

$1,000 Attorney Stevens received was a fee charged for services rendered "in connection with

bankruptcy," which was subject to the disclosure requirements.

Since all of the $20,500 in fees was paid either in contemplation of, or in connection with, this

bankruptcy case, they were all subject to the disclosure requirements of § 329 and Rule 2016(b).[15]

*2. Payments from third parties are subject to disclosure.*

Attorney Durell argues fees paid by third parties are not subject to disclosure requirements.

However, the language of § 329(a) provides otherwise.  It requires a debtor's attorney to disclose the

source of payments received, regardless of what that source is: "An attorney representing a debtor…shall

file with the court a statement of the compensation paid or agreed to be paid…for services rendered or to

be rendered in contemplation of or in connection with the case by such attorney, **and the source of such**

---

[14] In the invoice dated November 2, 2015 (doc. # 188, pp. 6-7), SLO charged the Debtors for services that dealt directly with the motion for relief from stay.  For instance, Attorney Stevens billed the Debtors for his email correspondence with the secured creditors regarding settlement positions; review of the notes, mortgages, security agreements, and judgments; and research regarding exemptions for insurance. The Debtors made a $1,000 payment toward the amount due for these services (doc. # 188).

[15] Pursuant to Vt. LBR 2014-1(a), "it is the duty of primary counsel for the [debtors] to … advise [other professionals in the case] of the requirements and risks, if any, pertaining to [that] professional's ability to obtain compensation," Attorney Durell had a duty to inform and assist Attorney Stevens with regard to compensation and disclosure requirements.

**compensation**." 11 U.S.C. 329(a) (emphasis added). "The bankruptcy court may order the disgorgement of any payment made to an attorney representing the debtor in connection with a bankruptcy proceeding, irrespective of the payment's source." In re Gorski, 519 B.R. at 73 (quoting In re Lewis, 113 F.3d 1040, 1046 (9th Cir. 1997)).

The fact that it was the Debtors' son, Jeffrey Frye, who paid some of the attorney's fees does not alter Attorney Durell's duty to disclose his receipt of those fees. Under the plain language of § 329(a), and pertinent case law, Attorney Durell was obliged to disclose all payments, regardless of the source. In sum, Jeffrey Frye's payment of $18,000 in fees was subject to the same disclosure requirements as the Debtors' payment of $2,500 in fees.

For these reasons, the Court determines the full $20,500, regardless of the source, was subject to the disclosure requirements of § 329(a) and Rule 2016(b), and the attorneys' failure to comply with those requirements warrants entry of a disgorgement order.

## IV.    Appropriate Sanction for Non-Disclosure

The U.S. Trustee argues that Attorney Durell's "material and repeated failures" to disclose fees warrant disgorgement of all fees paid in this case (doc. # 165, p. 15). Attorney Durell counters that sanctions for his failure to comply with § 329 should be limited or denied because of the extraordinary circumstances present in this case. Attorney Durell points in particular to (i) his below-market billing rate (of $100 per hour), (ii) the substantial amount of uncompensated work he performed for the Debtors, (iii) the fact that the payments were from outside of the estate, (iv) his lack of concealment of any payments, (v) the Debtors' and their son's opposition to disgorgement, (vi) his limited bankruptcy experience and reluctance to enter his appearance in bankruptcy court, and (vii) the Debtors' limited options for counsel (due to the significant number of attorneys conflicted out of the case) (doc. # 176-2, pp. 14-15).[16]

It is well settled that "[a] bankruptcy court **may** deny an attorney all compensation based upon the failure to satisfy § 329(a) and Rule 2016(b)." In re Chatkhan, 496 B.R. 687, 696 (Bankr. E.D.N.Y. 2012) (emphasis added). Full disgorgement of fees is not automatic, and the bankruptcy court has the "latitude to tailor a sanction that is appropriate under the unique circumstances" of the case. In re McCrary & Dunlap Const. Co., LLC, 79 Fed. Appx. 770 (6th Cir. 2003) (noting that even in cases involving willful disregard of disclosure obligations, some courts require partial – as opposed to full – disgorgement). In determining the appropriate type and amount of sanction, the court exercises its discretion and examines the particular facts of the case, including whether any unusual difficulties existed. See In re East Hill Mfg. Corp., No. 97-11884, 2001 WL 34808428, at *5 (Bankr. D. Vt. Jan. 25, 2001) ("unusual

---

[16] The United States counters that no extraordinary circumstances excuse Attorney Durell's failure to disclose fees, but Attorney Durell's argument addresses a distinct and separate issue: whether the extraordinary circumstances of this case justify a sanction less harsh than full disgorgement.

difficulties" attorneys faced in practicing before four different bankruptcy judges in one year – judges who had different styles and conflicting perspectives on enforcing disclosure requirements – warranted court's use of its equitable powers to allow attorney's fees, despite attorneys' failure to comply with mandatory disclosure requirements). Additionally, the sanction should be carefully tailored to be sufficient to punish the misconduct but no more than is reasonably necessary to deter the culpable conduct. See Vasbinder v. Scott, 976 F.2d 118 (2d Cir. 1992).

In arguing that Attorney Durell's failure to disclose all fees warrants the sanction of full disgorgement, the U.S. Trustee relies on several cases in which a court directed the attorney to disgorge all fees. However, the underlying facts in those cases are readily distinguishable from the facts and circumstances of this case. In In re Prudhomme, 43 F.3d 1000 (5th Cir. 1995), the circuit court ordered full disgorgement because in addition to finding the attorney did not comply with the disclosure requirements, it found the attorney's services were unsatisfactory, did not benefit any of the debtors or their estates, and hurt the debtors more than helped them. In In re Chatkhan, 496 B.R. 687 (Bankr. E.D.N.Y. 2012), the court found the attorney's failure to disclose was more than a mere "technical breach" as the attorney also failed to disclose the pre-petition retainer and violated a separate court order directing disclosure. In In re Wood, 408 B.R. 841 (Bankr. D. Kan. 2009), the court not only found the attorney's fees were excessive in light of the services rendered, but also that the attorney had engaged in the unauthorized practice of law and had filed a false disclosure statement. In In re Laferriere, 286 B.R. 520 (Bankr. D. Vt. 2002), this Court directed the attorney to disgorge all fees where, in addition to the attorney's failure to disclose fees, there was irrefutable evidence demonstrating the attorney had concealed some payments. Lastly, in In re Kero-Sun, Inc., 58 B.R. 770 (Bankr. D. Conn. 1986), the court found the law firm's shoddy conduct did not represent "even minimal efforts of a law firm with its exceptional qualifications in the field of bankruptcy law" and that, in addition to the firm's violation of the disclosure requirements, warranted full disgorgement.

Here, there is no indication Attorney Durell misled the Court, sought to conceal any fees, engaged in the unauthorized practice of law, or performed services below the minimum acceptable level – nor does the U.S. Trustee or case trustee make such allegations. Rather, the record reveals Attorney Durell devoted substantial time and energy to this bankruptcy case in spite of his charging a below-market rate and the Debtors' inability to pay for all services. The record also indicates he continued to represent the Debtors and to do whatever he could to help the Debtors keep their home – even when the Debtors' failure to pay him was having significant financial and emotional impact on his personal life – because the Debtors could find no other counsel. From the outset, Attorney Durell candidly expressed to this Court the great reluctance he had in agreeing to represent the Debtors, and how most of his time and resources were

13

consumed by this case.  However, due to the Debtors' considerable history in bankruptcy cases, the vast majority of the Vermont bankruptcy bar had conflicts of interest.  As a result, the Debtors had a difficult time retaining competent attorney to represent them, and this created an access to justice issue to which Attorney Durell responded.  Attorney Durell's efforts in representing the Debtors despite the sometimes overwhelming demands the case placed upon him, at a time when no other attorney would take this case, are important considerations in determining the appropriate amount the attorney must disgorge.  They weigh in favor of a lighter sanction than what the U.S. Trustee seeks.

Balancing Attorney Durell's failure to properly disclose fees on one hand against the unique circumstances and valuable services Attorney Durell provided on the other, the Court determines justice is best served by requiring him to disgorge one-half of the fees paid in this case.  The Court intends this sanction to underscore the gravity of the attorneys' violations of bankruptcy fee disclosure requirements and to deter future violations, and also to reflect the unusual difficulties and circumstances Attorney Durell encountered in representing these Debtors.

Therefore, Attorney Durell shall be required to disgorge $10,250, to the Debtors and Jeffrey Frye, *pro rata*, according to the percentage each paid towards the total amount of fees (i.e., 12 % or $1,230 to the Debtors and 88% or $9,020 to Jeffrey Frye).[17]

## CONCLUSION

Based upon the record in this case, and the extensive arguments presented by all parties, the Court determines (i) § 329 is not unconstitutionally overbroad or vague, (ii) the fees paid to Attorney Durell were not excessive, (iii) Attorney Durell has failed to comply with the applicable fee disclosure requirements of the Bankruptcy Code and Rules, and (iv) the appropriate sanction for this failure to disclose, in light of the specific facts and circumstances of this case, is disgorgement of one-half of the fees paid.

This memorandum constitutes the Court's findings of fact and conclusions of law.

April 12, 2017
Burlington, Vermont

Colleen A. Brown
United States Bankruptcy Judge

---

[17] At the hearing held on July 20, 2016, the U.S. Trustee argued, for the first time, that if the Court orders disgorgement of all fees, and the Debtors and their son decline the money or return it to counsel, then Attorney Durell should be required to deliver $15,500 of the $20,500 to the Chapter 7 Trustee, as an estate asset under § 541(a)(7) (doc. # 184).  The U.S. Trustee did not provide any case law or legal argument to support this position  The Court finds this request for relief is beyond the scope of the motion, unsupported, and not properly before the Court.